**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| TURNER INDUSTRIES GROUP, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> THE TRAVELERS COMPANIES, INC., ET AL. <br><br> Defendants. | Civil Action No. 09-cv-0834-RET-DLD <br><br> Judge Ralph E. Tyson <br><br> Magistrate Judge Docia L. Dalby |

**PLAINTIFF TURNER INDUSTRIES GROUP, L.L.C.'S OPPOSITION TO
MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(b)(2) BY THE TRAVELERS COMPANIES, INC.**

JOHN W. deGRAVELLES (#04808), T.A.
RANDOLPH W. HUNTER (#7084)
J. NEALE deGRAVELLES (#29143)
deGravelles, Palmintier, Holthaus & Frugé, L.L.P.
618 Main Street
Baton Rouge, LA 70801-1910
(225) 344-3735
Fax (225) 336-1146
jdegravelles@dphf-law.com
rhunter@dphf-law.com
ndegravelles@dphf-law.com

JOHN H. FENNER (#17565)
Corporate General Counsel
Turner Industries Group, L.L.C.
P.O. Box 2750
Baton Rouge, LA 70821
(225) 214-2066
Fax (225) 215-6025
jfenner@turner-industries.com

ANNA P. ENGH
TIMOTHY D. GRESZLER
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20044-7566
(202) 662-6000
Fax (202) 662-6291
aengh@cov.com
tgreszler@cov.com

*Attorneys for Plaintiff Turner Industries Group, L.L.C.*

March 29, 2010

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 2

    A.   The Asbestos Claims and TIG's Historical Insurance Program .................................. 2

    B.   The Special Liability Group and the Relevant Corporate History of
          Defendants USF&G and Travelers Companies ............................................................ 3

    C.   The Handling of the Underlying Asbestos Claims ...................................................... 4

ARGUMENT .................................................................................................................................. 6

    I.    TRAVELERS COMPANIES PURPOSEFULLY DIRECTED ITS
          ACTIVITIES TO LOUISIANA WHEN IT MADE COVERAGE
          DECISIONS RESPECTING A LOUISIANA INSURED AND
          OTHERWISE ENGAGED IN SUBSTANTIAL INSURANCE-RELATED
          ACTIVITIES IN LOUISIANA. ................................................................................. 7

    II.   THIS LITIGATION ARISES OUT OF TRAVELERS COMPANIES'
          LOUISIANA CONTACTS AND NO FACTOR INDICATES THAT
          JURISDICTION IS UNREASONABLE. .................................................................. 11

    III.  AT A MINIMUM, TIG IS ENTITLED TO DISCOVERY REGARDING
          TRAVELERS COMPANIES' JURISDICTIONAL ALLEGATIONS. .................... 13

CONCLUSION ............................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Aetna Cas. & Sur. Co. v. Continental W. Ins. Co.*,
 97-206 (La. App. 3 Cir. 12/10/97), 704 So. 2d 900 ................................................................12

*Alpine Plastics, Inc. v. Erlstedt*,
 2003 WL 22174288 (E.D. La. Sept. 17, 2003) ......................................................................11

*Atel Maritime Investors, LP v. Sea Mar Mgmt., L.L.C.*,
 2009 WL 5214898 (E.D. La. Dec. 23, 2009) ..........................................................................9

*Blanco v. Carigulf Lines*,
 632 F.2d 656 (5th Cir. 1980) ............................................................................................13, 14

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ................................................................................................................11

*Cent. Freight Lines Inc. v. APA Transp. Corp.*,
 322 F.3d 376 (5th Cir. 2003) .......................................................................................7, 11, 12

*Claimserviceprovider, Inc. v. St. Paul Travelers Cos.*,
 2006 WL 2989240 (E.D. La. Oct. 18, 2006) ..........................................................................12

*First Guar. Bank of Hammond v. Attorneys Liab. Assurance Soc'y, Ltd.*,
 515 So. 2d 1080 (La. 1987) ..................................................................................................8, 9

*Frees v. McMillan*,
 2007 WL 2701161 (W.D. La. Sept. 7, 2007) ..........................................................................12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
 466 U.S. 408 (1984) ..................................................................................................................6

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
 456 U.S. 694 (1982) ................................................................................................................13

*Int'l Shoe Co. v. Washington*,
 326 U.S. 310 (1945) ..................................................................................................................6

*McGee v. Int'l Life Ins. Co.*,
 355 U.S. 220 (1957) ..................................................................................................................8

*Miss. Interstate Express, Inc. v. Transpo, Inc.*,
 681 F.2d 1003 (5th Cir. 1982) ..................................................................................................7

**Page(s)**

**CASES**

*Moncrief Oil Int'l Inc. v. OAO Gazprom*,
    481 F.3d 309 (5th Cir. 2007) .................................................................................................7

*Newton & Assocs. v. Miller Desk, Inc.*,
    2003 WL 21283948 (E.D. La. June 3, 2003)..................................................................10, 11

*Nuovo Pignone, SpA v. Storman Asia M/V*,
    310 F.3d 374 (5th Cir. 2002) ................................................................................................6, 7

*Stripling v. Jordan Prod. Co.*,
    234 F.3d 863 (5th Cir. 2000) ....................................................................................................6

*Thompson v. Great Midwest Fur Co.*,
    395 So. 2d 840 (La. Ct. App. 1981).......................................................................................10

*Walk Haydel & Assocs. v. Coastal Power Prod. Co.*,
    517 F.3d 235 (5th Cir. 2008) ......................................................................................8, 12, 13

*Wien Air Alaska, Inc. v. Brandt*,
    195 F.3d 208 (5th Cir. 1999) ..................................................................................................12

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..................................................................................................................7

**FEDERAL RULES**

Fed. R. Civ. Proc. 12(b)(2) ............................................................................................................6

**INTRODUCTION**

In this insurance coverage lawsuit, Turner Industries Group, L.L.C. ("TIG"), a Louisiana employer with more than 12,000 employees, seeks damages and a declaration of coverage as a result of the defendants' failure to comply with their obligation to provide defense and indemnity coverage to TIG for asbestos-related claims. Until 2007, the defendants provided complete defense and indemnity coverage for the asbestos claims. By 2007, Defendant The Travelers Companies, Inc. ("Travelers Companies"), through its Special Liability Group, had taken primary responsibility for managing and handling TIG's asbestos claims under policies issued by its subsidiary, Defendant United States Fidelity & Guaranty Company. Since 2007, instead of providing complete coverage for all asbestos claims—as had been the consistent practice for the preceding eleven years—the Special Liability Group within Travelers Companies has denied coverage or reserved rights for various asbestos claims, all to TIG's detriment and prejudice.

Since 2007, the Special Liability Group within Travelers Companies has maintained extensive and continuous contact with TIG in Louisiana. Special Liability Group personnel have, on multiple occasions, traveled to TIG's headquarters in Baton Rouge to discuss the underlying asbestos claims. They have also sent letters and facsimiles relating to asbestos claims to TIG in Louisiana, and have initiated or participated in telephone calls with TIG in Louisiana. Despite these actions, which establish Travelers Companies' purposeful availment of Louisiana law, Travelers Companies now argues that this case should be dismissed because this Court purportedly lacks personal jurisdiction.

Remarkably, in its Motion, Travelers Companies does not even acknowledge the extensive contacts the Special Liability Group has had with TIG in Louisiana, nor does it acknowledge that its coverage denials are the reason for this lawsuit. Instead, Travelers Companies focuses on its allegations that it "is not a resident" of Louisiana, that it "has not

1

issued any policies of insurance," and that it "never assumed obligations under" policies issued by its subsidiaries. (*See* Mot. at 3-4.) In so doing, Travelers Companies does not explain why claim handlers in the Special Liability Group have held themselves out to be employees of Travelers Companies, including by (i) providing business cards that identify "The Travelers Companies, Inc." as their employer; (ii) sending letters under "Travelers" letterhead and referring to themselves as "Travelers"; and (iii) issuing checks for which "Travelers" is the payor. Just as importantly, Travelers Companies ignores that its own SEC filings state that the Special Liability Group is a "separate unit" of the Company.

Well-established law makes clear that a parent company, such as Travelers Companies, is subject to personal jurisdiction in circumstances like those presented here where the parent company has—either by itself or through its agents—made coverage determinations and engaged in substantial insurance-related activities in the forum. For these reasons, which are discussed in detail below, Travelers Companies' motion to dismiss should be denied.

## FACTUAL BACKGROUND

### A.    The Asbestos Claims and TIG's Historical Insurance Program

TIG, which provides maintenance, construction, pipe fabrication, and specialty industrial services principally to petro-chemical facilities along the gulf coast, is the successor to certain industrial contracting enterprises, including Nichols Construction Company ("Nichols") and Harmony Corporation (collectively, "TIG Predecessors").[1] (Scardina Decl. ¶ 4.) Hundreds of asbestos-related claims have been brought against TIG and/or TIG Predecessors alleging injury or damages as a result of the alleged use of asbestos in Nichols' or other TIG Predecessors'

---

[1] Bert S. Turner founded what ultimately became TIG's principal business operations in 1962. In nearly fifty years of existence, the various Turner companies, headquartered in Baton Rouge, Louisiana, have operated at virtually every major industrial facility in the south.

operations. (*Id.* ¶ 5.) The vast majority of such claims have been brought in Louisiana courts. (*Id.*)

TIG's asbestos liabilities are covered under a series of general liability insurance policies, including primary and excess policies issued by defendants United States Fidelity & Guaranty Company and Fidelity & Guaranty Insurance Underwriters, Inc. (collectively, "USF&G") from March 1, 1976 through March 1, 1989. (*Id.* ¶ 6; Dkt Nos. 1 & 6 ¶ 18.) These policies were purchased by, and delivered to, Nichols or other TIG Predecessors at their headquarters in Baton Rouge, Louisiana. (*See* Scardina Decl. ¶ 7.)

### B. The Special Liability Group and the Relevant Corporate History of Defendants USF&G and Travelers Companies

In or about 1998, USF&G became a subsidiary of St. Paul Fire and Marine Insurance Company. In 2004, as the result of a merger, USF&G became a subsidiary of The St. Paul Travelers Companies, Inc. (*See* Greszler Decl. Ex. 2 at 1.) In 2007, St. Paul Travelers changed its name to The Travelers Companies, Inc. ("Travelers Companies"). (*Id.*)

Travelers Companies is an international insurance conglomerate with billions of dollars in annual income. (*Id.* Ex. 1 at 10, Schedule II.) The Special Liability Group ("SLG") is a "separate unit" of the Company. (*Id.* at 27.) According to Travelers Companies' 10-K filings, that "unit" is "staffed by dedicated legal, claim, finance and engineering professionals" and its purpose is to "manage[] the Company's asbestos and environmental liabilities." (*Id.* at 4, 27, 179.)[2] As discussed in more detail below, personnel in the SLG have, for years, managed and

---

[2] Every Travelers Companies 10-K filed since USF&G became a Travelers Companies' subsidiary in 2004 has included similar or identical statements. (Greszler Decl. Ex. 2 at 4, 27; Ex. 3 at 4, 27; Ex. 4 at 4, 27; Ex. 5 at 2, 19; Ex. 6 at 2, 23.)

3

handled the underlying asbestos claims asserted against TIG and, during that period, made numerous coverage determinations regarding such claims.

### C. The Handling of the Underlying Asbestos Claims

From the time the first asbestos claim was brought against TIG or TIG Predecessors in 1996 until around November 2007, Defendants USF&G, Fireman's Fund Insurance Company ("FFIC"), Associated Indemnity Corporation ("AIC"), and/or Travelers Companies (or its predecessors) defended the underlying asbestos claims on TIG's behalf and provided complete indemnity coverage. (Scardina Decl. ¶¶ 8, 10-11.) During this period, the Defendants had total control of the defense of the underlying litigation, including by selecting, retaining, and supervising TIG's underlying defense counsel. (*Id.* ¶¶ 8-9.) In fact, prior to November 2007, TIG's only involvement with the asbestos claims was to send a copy of each complaint to Wright & Percy Insurance Agency, which forwarded the complaints to USF&G, FFIC, AIC, and/or Travelers Companies. (*Id.* ¶ 9.) After tendering the asbestos claims in this fashion, neither TIG's risk management nor its legal department had any involvement with any pre-November 2007 asbestos claim. (*Id.*)

Since at least November 2007 to the present, coverage determinations and claim handling decisions have been made, and the defense of underlying claims has been overseen, by members of Travelers Companies' SLG. (*Id.* ¶ 12.) During this period, the SLG reversed the past practice pursuant to which TIG had received complete defense and indemnity coverage for all asbestos claims and, since November 2007, has denied coverage or reserved rights for various asbestos claims. (*Id.* ¶¶ 13-14.)

Since Travelers Companies' SLG began to deny coverage in 2007, personnel in the SLG, including Lori Slater, Marcy Cabrera, and Francine Vincenzo (collectively, "SLG Claim Handlers"), have communicated coverage determinations to, and maintained extensive

4

telephonic, written, and in-person contact with, TIG in Louisiana.  (*Id*. ¶¶ 14-19.)  For example, SLG Claim Handlers have, on multiple occasions, traveled to TIG's headquarters in Baton Rouge, Louisiana to meet with TIG employees about coverage for asbestos claims.  (*Id.* ¶ 15.)  During at least one such meeting, SLG Claim Handlers provided copies of their business cards, all of which identify their employer as "The Travelers Companies, Inc."  (*Id.* ¶ 15 & Ex. A.)

In addition to in-person meetings, SLG Claim Handlers have sent letters and facsimiles relating to coverage for asbestos claims to TIG in Louisiana.  (*Id.* ¶ 16.)  These communications are written under "Travelers" letterhead, and identify the author/sender as part of the SLG.  (*E.g., id.* & Exs. B-D.)  Facsimiles identify the sender as "The Travelers—SLG."  (*E.g., id.* Ex. D.)  The text of these letters generally refers to "Travelers" (or to "St. Paul," i.e., Travelers Companies' predecessor).  (*E.g., id.* Exs. B-D.)  For example, an April 20, 2009 letter from Ms. Slater references "*Travelers'* recommendations" about an asbestos claim, and states that "*our obligation and/or our contract* is *with our* insured"; the letter provides no indication that Ms. Slater is acting on behalf of any entity other than "Travelers."  (*Id.* Ex. C (emphasis added)).  Likewise, when SLG Claim Handlers agree to provide complete or partial coverage for some asbestos claims, they send checks for defense and indemnity costs directly to TIG's defense counsel in Metairie, Louisiana.  (Scardina Decl. ¶ 19.)  "Travelers" appears prominently on the checks as the payor.  (*E.g., id.* ¶ 19 & Ex. E.)  The address and phone number on those checks is identical to addresses and phone numbers that appear on letters sent by SLG Claim Handlers.

In addition to their written and in-person contacts with TIG in Louisiana, SLG Claims Handlers have also maintained regular telephonic communications with TIG and with TIG's underlying defense counsel regarding the underlying asbestos claims.  (Scardina Decl. ¶¶ 17-18.)

5

As a result of Travelers Companies' unjustified practice beginning in 2007 to deny coverage for certain underlying asbestos claims and to reserve rights for certain other claims, TIG brought this lawsuit seeking damages and declaratory relief. (Dkt No. 1.) Travelers Companies has moved to dismiss based on alleged lack of personal jurisdiction.

## ARGUMENT

To survive a preliminary motion to dismiss under Rule 12(b)(2), a "plaintiff need only present a prima facie case of personal jurisdiction." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000). The court "'must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts.'" *Id.* (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)).

This Court has personal jurisdiction over Travelers Companies as long as jurisdiction comports with Louisiana's long-arm statute and Constitutional due process. *Id.* Because Louisiana's long-arm statute is "coterminous with the scope of the Due Process Clause," *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002), the only issue here is whether jurisdiction comports with that scope.

To satisfy due process, the defendant must have "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted). In the context of specific jurisdiction,[3] applying this standard involves three steps: "(1) whether the defendant . . . purposefully directed its activities towards

---

[3] By addressing specific jurisdiction, TIG does not concede that Travelers Companies lacks the "continuous and systematic contacts" with Louisiana necessary to establish general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). To the contrary, TIG has served discovery that, among other things, seek to test Travelers Companies' claim that it lacks such contacts. (*See* Greszler Decl. Exs. 7-9.)

6

the forum state or purposely availed itself of the privileges of conducting activities there;

(2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone,* 310 F.3d at 378. All are satisfied here.

**I.  TRAVELERS COMPANIES PURPOSEFULLY DIRECTED ITS ACTIVITIES TO LOUISIANA WHEN IT MADE COVERAGE DECISIONS RESPECTING A LOUISIANA INSURED AND OTHERWISE ENGAGED IN SUBSTANTIAL INSURANCE-RELATED ACTIVITIES IN LOUISIANA.**

A defendant purposefully avails itself of the forum if its "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Presence in the forum is not required. *Nuovo Pignone*, 310 F.3d at 379. To the contrary, "a single purposeful contact is sufficient to confer personal jurisdiction if the cause of action arises from the contact." *Id.*.

In breach of contract cases, "[t]he rule developed by this circuit . . . is that when a nonresident defendant takes 'purposeful and affirmative action,' the effect of which is 'to cause business activity, foreseeable by (the defendant), in the forum state,' such action by the defendant is considered a 'minimum contact' for jurisdictional purposes." *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982); *see also Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 383 (5th Cir. 2003) (similar). Where Louisiana is "the hub of the parties' activities," personal jurisdiction is appropriate. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (quoting *Transpo*, 681 F.2d at 1008-09)).

By denying insurance claims pending in Louisiana courts under policies issued to a Louisiana-based employer that has done business in this state for nearly fifty years, there is no question that Travelers Companies took purposeful action in Louisiana that caused business activity here, or that Louisiana is (and was) the "hub" of the parties' activities. In this regard,

7

since at least 2007, Travelers Companies has engaged in substantial activities—through its agents at the SLG—in Louisiana. (Scardina Decl. ¶¶ 12-19.) Throughout this period, SLG Claim Handlers maintained extensive and continuous written, telephonic, and in-person contacts with TIG in Louisiana. (*Id.*) SLG Claim Handlers managed the TIG asbestos claims and supervised TIG's defense counsel in Metairie, Louisiana. (*See id.* ¶ 12.) SLG Claim Handlers denied coverage or reserved rights for dozens of asbestos claims asserted against TIG pending in Louisiana courts. (*Id.* ¶¶ 5, 13.) These coverage decisions were communicated to TIG in Louisiana by letter, facsimile, and telephone, and through in-person meetings. (*Id.* ¶¶ 14-18.) In their business cards and communications, SLG Claim Handlers purported to be employed by, and to be representing, Travelers Companies. (*Id.* Exs. A-E.) Moreover, Travelers Companies represents in its SEC filings that it has control over the SLG. (*See* Greszler Decl. Exs. 1-6.)

Travelers Companies' in-person, written, and telephonic contacts with TIG in Louisiana constitute the purposeful availment that due process requires. *See, e.g., Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 244-45 (5th Cir. 2008) (holding jurisdiction is appropriate where parties, *inter alia*, met in Louisiana and "exchanged over a hundred contacts in the form of telephone calls, faxes, and letters . . . many of which were sent from [defendant's] offices to [plaintiff] in Louisiana"). Indeed, well-established law is clear that an insurance company is subject to personal jurisdiction when, as here, the "contract was delivered in [the forum], the premiums were mailed from [the forum] and the insured was a resident of [the forum]." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957); *First Guar. Bank of Hammond v. Attorneys Liab. Assurance Soc'y, Ltd.*, 515 So. 2d 1080, 1084 (La. 1987) (jurisdiction appropriate where "risk covered by the policy is centered in Louisiana" and "assured[s] . . . are citizens and residents of Louisiana"). Although USF&G—a Travelers Companies' subsidiary—

8

issued the policies, Travelers Companies has itself made, or appeared to make, many coverage determinations under those policies, and has engaged in substantial insurance-related actions that caused significant effects in Louisiana. Such activities satisfy due process. *See id.*

In similar circumstances, courts in this circuit have held that jurisdiction over a holding company/parent corporation is appropriate. In *Atel Maritime Investors, LP v. Sea Mar Mgmt., L.L.C.*, 2009 WL 5214898 (E.D. La. Dec. 23, 2009), a Louisiana-based plaintiff sued a parent holding company and two affiliated companies. *Id.* at *1. The plaintiff alleged, *inter alia*, that, through its CEO, the parent corporation "directed its subsidiaries to execute the alleged fraud [and breach the contract]." *Id.* at *3. In holding that jurisdiction over the parent was appropriate, the Eastern District of Louisiana concluded "[i]t is not unreasonable for [the parent], which allegedly caused its subsidiaries to commit breach of contract . . . within Louisiana, to expect to have to answer for its conduct in Louisiana." *Id.* at *4. Likewise, it is not unreasonable for Travelers Companies, which TIG alleges caused the breach of contract through its apparent agents in the SLG, to answer for its conduct in Louisiana.

Travelers Companies' Motion to Dismiss does not even mention the SLG's activities and conduct in Louisiana. Instead, Travelers Companies simply asserts that it "has not managed or made any determinations concerning Turner's coverage benefits under those policies issued by USF&G." (Mot. at 3.) This assertion is based solely on the Affidavit of Wendy C. Skjerven, which states, in pertinent part, that Travelers Companies "has not assumed any contractual obligations that its indirect or direct subsidiary may have under any policies of insurance." (*See id.* (citing Skjerven Aff. ¶ 6).) Whether this *legal conclusion* ultimately is proven to be true, however, is wholly irrelevant to whether jurisdiction over Travelers Companies is appropriate. TIG's jurisdictional claim is based not on whether Travelers Companies formally assumed

9

USF&G's contractual obligations, but on the specific actions that Travelers Companies has taken—either directly or through its SLG agents—in Louisiana. Travelers Companies presents no argument—none—suggesting that such activities do not satisfy due process.[4]

Nor is there merit to any suggestion by Travelers Companies that this Court lacks jurisdiction because SLG Claims Handlers are employees of The Travelers Indemnity Company, and not Travelers Companies.[5] (*See* Aff. of Wendy C. Skjerven ¶ 3 (Greszler Decl. Ex. 10).) Even if true, that assertion is irrelevant because the facts indicate that SLG Claims Handlers had apparent authority to—and did—act on behalf of Travelers Companies. SLG Claims Handlers' business cards identify their employer as "The Travelers Companies, Inc." (Scardina Decl. ¶ 15 & Ex. A.) SLG Claim Handlers' written communications appear under "Travelers" letterhead and identify "Travelers" as the responding entity. (*Id.* Exs. B-D.) Likewise, checks issued by SLG Claim Handlers identify "Travelers" as the payor. (*Id.* Ex. E.) Moreover, Travelers Companies, in its SEC filings, represents that the SLG is a "unit" of the Company. (*E.g.,* Greszler Decl. Ex. 1 at 27.) At a minimum, these facts establish a prima facie case of an apparent agency relationship.[6] *See Newton & Assocs. v. Miller Desk, Inc.*, 2003 WL 21283948,

---

[4] Travelers Companies also asserts that this Court lacks personal jurisdiction because it "is not a resident of the State of Louisiana" and has not "issued any policies of insurance." (Mot. at 3.) These factors have no effect on the jurisdictional analysis. Plainly, due process confers jurisdiction over non-resident defendants, and such jurisdiction is appropriate if there is purposeful availment, regardless of whether the defendant issued an insurance policy.

[5] Travelers Companies has made no such argument. On March 16, however, Travelers Companies provided a second affidavit executed by Wendy Skjerven, which asserts that SLG Claims Handlers are employees of a different Travelers Companies subsidiary, The Travelers Indemnity Company. (Greszler Decl. Ex. 10 ¶¶ 7-9.) As discussed in the text, even if this is true, Travelers Companies is subject to jurisdiction based on agency principles.

[6] *See, e.g., Thompson v. Great Midwest Fur Co.*, 395 So. 2d 840, 844 (La. Ct. App. 1981) ("[Apparent authority] arises when the principal, by his acts or conduct, has knowingly caused or permitted another to appear as his agent to the injury of third parties who have acted in good faith and with reasonable prudence. . . . The principal will be bound for the agent's actions if the (continued…)

at *4 n.2 (E.D. La. June 3, 2003).  Because the "Fifth Circuit has long held that the actions of an agent are attributable to a non-resident principal for purposes of establishing personal jurisdiction," this agency relationship is alone sufficient to establish personal jurisdiction over Travelers Companies.  *E.g., Alpine Plastics, Inc. v. Erlstedt*, 2003 WL 22174288, at *6 (E.D. La. Sept. 17, 2003) (citing cases).

## II. THIS LITIGATION ARISES OUT OF TRAVELERS COMPANIES' LOUISIANA CONTACTS AND NO FACTOR INDICATES THAT JURISDICTION IS UNREASONABLE.

There is no doubt that this lawsuit arises out of Travelers Companies' Louisiana contacts.  The lawsuit is the direct result of Travelers Companies' practice, beginning in 2007, to deny coverage for certain underlying asbestos claims and to reserve rights for other such claims.  Thus, Travelers Companies can prevail on its Motion only if it shows that some other factor makes the assertion of jurisdiction unreasonable, which it cannot do.

"Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable."  *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 384 (5th Cir. 2003).  The defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).  Factors considered include: "(1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial

---

principal has acted in a manner so as to give an innocent third party the reasonable belief the agent has authority to act for the principal.").

11

system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies." *Central Freight*, 322 F.3d at 384.

All factors weigh in favor of jurisdiction. "Louisiana has a very strong interest in requiring insurance companies to come to Louisiana to defend themselves for their failure to defend or indemnify" a Louisiana-based business. *Aetna Cas. & Sur. Co. v. Continental W. Ins. Co.*, 97-206 (La. App. 3 Cir. 12/10/97), 704 So. 2d 900, 904; *see Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). Likewise, TIG has an obvious interest in obtaining complete relief from all potentially liable entities in a single action and in avoiding the risk of inconsistent judgments that would be present if it were required to litigate in multiple fora. *E.g., Frees v. McMillan*, 2007 WL 2701161, at *4 (W.D. La. Sept. 7, 2007). Judicial economy also favors the efficient use of resources maintained by a single action involving all potentially liable parties. *See id.* Finally, as an international insurance conglomerate with billions of dollars in annual income, Travelers Companies cannot reasonably contend that it would be overly burdened by participating in litigation in Louisiana, particularly because it is represented by the same attorneys who represent its co-defendant and subsidiary, USF&G.[7] *See, e.g., Walk Haydel*, 517 F.3d at 245. Indeed, in at least one other case (also based on breach of contract involving agency principles), Travelers Companies (when it was called The St. Paul Travelers Companies, Inc.) argued, in response to a co-defendant's motion to dismiss based on improper venue, that Louisiana was "the proper forum to adjudicate the claims against it." *Claimserviceprovider, Inc. v. St. Paul Travelers Cos.*, 2006 WL 2989240, at *2 (E.D. La. Oct. 18, 2006).

---

[7] Nor can Travelers Companies complain that it would be subject to any undue travel burdens—the SLG office that has had primary responsibility for managing and handling the TIG asbestos claims is located in Houston, Texas, only about 250 miles from Baton Rouge.

12

Not surprisingly, given these facts, Travelers Companies does not even suggest in its Motion that the assertion of personal jurisdiction by this Court would be unfair or unreasonable.

## III. AT A MINIMUM, TIG IS ENTITLED TO DISCOVERY REGARDING TRAVELERS COMPANIES' JURISDICTIONAL ALLEGATIONS.

If this Court has any question about whether Travelers Companies is subject to personal jurisdiction, TIG is entitled, at a minimum, to discovery on Travelers Companies' Louisiana contacts. Indeed, although discovery is generally within the district court's discretion, the Supreme Court has concluded that "[h]aving put the issue in question, [defendant] did not have the option of blocking the reasonable attempt of [plaintiff] to meet its burden of proof." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 709 (1982) (sanctioning defendant for failing to respond to jurisdictional discovery). Likewise, the Fifth Circuit has reversed a district court that granted a motion to dismiss based on lack of personal jurisdiction when discovery relevant to jurisdiction was pending. *Blanco v. Carigulf Lines*, 632 F.2d 656, 657-58 (5th Cir. 1980) ("Plaintiff is not required to rely exclusively upon a defendant's affidavit for resolution of the jurisdictional issue where that defendant has failed to answer plaintiff's interrogatories specifically directed to that issue.").[8]

TIG has served document requests, interrogatories, and a deposition notice on Travelers Companies designed to obtain discovery relating to jurisdiction, including information about (i) jurisdictional averments in Ms. Skjerven's affidavits, (ii) the relationship between Travelers Companies and the SLG, (ii) Travelers Companies' contacts with Louisiana, (iii) any direct

---

[8] *See also Walk Haydel*, 517 F.3d at 242 ("[B]oth parties must be allowed to submit affidavits *and to employ all forms of discovery,* subject to the district court's discretion and as long as the discovery pertains to the personal-jurisdiction issue. . . . By substantially curtailing the amount of discovery that could be obtained, the court erred in requiring more than a *prima facie* showing of jurisdiction . . . .") (emphasis added).

13

involvement by Travelers Companies relating to the asbestos claims asserted against TIG, and (iv) whether Travelers Companies has maintained the continuous and systematic contacts with Louisiana necessary to sustain general jurisdiction. (*See* Greszler Decl. Exs. 7-9.)

The need for such discovery is underscored by the facial deficiencies in the Skjerven affidavits. Those affidavits contain no information about the basis for the statements therein except the boilerplate that Ms. Skjerven has knowledge of "the facts recited in [the] Affidavit[s] either personally or through [her] review of business records." (Mot. Ex. A ¶ 2; Greszler Decl. Ex. 10 ¶ 2.) The affidavits provide no indication about how Ms. Skjerven obtained her purported knowledge or about the documents or other information that she reviewed to prepare the affidavits. For example, Ms. Skjerven alleges in a conclusory manner that the employer information on the business cards of the SLG Claim Handlers is wrong, but offers no explanation for why that information is wrong, or for why the SLG Claim Handlers hold themselves out as employees of Travelers Companies when they allegedly are not. (*See* Greszler Decl. Ex. 10 ¶¶ 7-9.) Moreover, as discussed above, certain of Ms. Skjerven's statements constitute legal conclusions. *Supra* at 9.

At an absolute minimum, TIG should be permitted a full opportunity to investigate these, as well Travelers Companies' other, jurisdictional allegations and to complete the jurisdictional discovery it has begun. *See Blanco*, 632 F.2d at 657-58.

**CONCLUSION**

For the foregoing reasons, Travelers Companies' Motion should be denied.

Respectfully submitted:

/s/ John W. deGravelles

JOHN H. FENNER (#17565)  JOHN W. deGRAVELLES (#04808), T.A.
Corporate General Counsel  RANDOLPH W. HUNTER (#7084)
Turner Industries Group, L.L.C.  J. NEALE deGRAVELLES (#29143)
P. O. Box 2750  deGravelles, Palmintier, Holthaus & Frugé,
Baton Rouge, LA  70821  L.L.P.
(225) 214-2066  618 Main Street
Fax (225) 215-6025  Baton Rouge, LA  70801-1910
jfenner@turner-industries.com  (225) 344-3735
 Fax (225) 336-1146
Of Counsel:  jdegravelles@dphf-law.com
 rhunter@dphf-law.com
ANNA P. ENGH  ndegravelles@dphf-law.com
TIMOTHY D. GRESZLER
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20044-7566
(202) 662-6000
Fax (202) 662-6291
aengh@cov.com
tgreszler@cov.com

*Attorneys for Plaintiff Turner Industries Group, L.L.C.*

March 29, 2010

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of March, 2010, the foregoing document was filed electronically with the clerk of the Court using the CM/ECF system. Notice of this filing will be sent to the following by operation of the Court's electronic filing system:

Ralph S. Hubbard, III
Tina L. Kappen
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA  70130
504-568-1990
504-310-9195 (fax)
rhubbard@lawla.com
tkappen@lawla.com

Sidney W. Degan, III
Julia A. Dietz
Degan, Blanchard & Nash
400 Poydras Street, Suite 2600
New Orleans, LA  70130
504-529-3333
504-529-3337 (fax)
jdietz@degan.com

Peggy B. Lowe
Degan Blanchard & Nash
6421 Perkins Road, Building C, Suite B
Baton Rouge, LA  70808
225-610-1110

                                                       /s/ John W. deGravelles
                                                      JOHN W. deGRAVELLES
deGravelles, Palmintier, Holthaus & Frugé, L.L.P.
618 Main Street
Baton Rouge, LA  70801-1910
(225) 344-3735
Fax (225) 336-1146
jdegravelles@dphf-law.com