**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TURNER INDUSTRIES GROUP, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 09-834-BAJ-DLD** |
| **THE TRAVELERS COMPANIES, INC.** | |

## ORDER

This matter is before the court on a referral from the district court of defendants Fidelity & Guaranty Underwriters, Inc. and United States Fidelity & Guaranty Company's ("USF&G") motion for protective order [with regard to the proposed deposition of Marsharee Wilcox]. (rec.doc. 131) The motion is opposed.

## *BACKGROUND*

Plaintiff Turner Industries Group, LLC ("TIG") is an industrial contractor located in Baton Rouge, Louisiana, and is the successor entity to Nichols Construction Company and National Maintenance Company, among other entities ("TIG Predecessors). TIG and/or its predecessors have been named as defendants in thousands of asbestos-related lawsuits, lawsuits which allege bodily injury claims as a result of exposure to asbestos. Additionally, other defendants in these lawsuits have brought claims against TIG and or its predecessors under alleged indemnification contracts. TIG referred to all these claims as the "Underlying Asbestos Claims, and asserted that it reasonably anticipates that more claims such as these will be filed in the future.

Defendant USF&G issued comprehensive general liability ("CGL") policies for the time period between March 1, 1976 to March 1, 1989, to TIG predecessors, policies which contained defense and indemnity provisions. Travelers is the parent corporation of USF&G. Fireman's Fund Insurance Company ("FFIC") issued comprehensive general liability

("CGL") policies for the time period between March 1, 1967 to March 1, 1976, to TIG predecessors, policies which also defense and indemnity provisions. The injuries for which TIG and its predecessors are allegedly responsible (the "underlying asbestos claims") occurred during the periods of time covered by these policies ("occurrence policies"). TIG contended that defendants USF&G and/or Travelers defended TIG regarding the underlying asbestos claims, hiring, supervising, and paying counsel directly, and FFIC contributed to the defense costs. In addition to paying all defense costs, defendants also paid all indemnity costs for the underlying asbestos claims until November, 2007.

In November 2007, Travelers and/or USF&G began denying defense and indemnity coverage to TIG on the underlying asbestos claims, either in whole or in part. TIG contends that these denials occurred after the Special Liability Group ("SLG") began handling the managing of the underlying asbestos claims and that SLG is a "unit under the control" of Travelers. (rec. doc. 1, pg 4) TIG filed suit in October, 2009, seeking declaratory judgment relating to the defense and indemnity coverage, coverage it contended USF&G/Travelers never denied or for which a reservation of rights was ever asserted until approximately November, 2007. TIG also alleged a breach of contract for these same denials of coverage. On April 6, 2011, upon the joint motion of plaintiff and defendants, TIG's claims against USF&G, The Travelers Indemnity Company, FFIC, Associated Indemnity Corporation, and The Travelers Companies were dismissed with prejudice, leaving only a cross claim filed by FFIC on March 29, 2010, against the other original defendants.[1] FFIC's cross claim alleges that the other defendants, along with FFIC,

---

[1] The Travelers Indemnity Company filed a Rule 12(b)(5) motion to dismiss the cross claim against it, and that motion is also pending. (rec.doc. 113)

had contributed on a *pro rata* basis to TIG's defense and/or settlement in the underlying asbestos claims for many years, until USF&G/Travelers began denying their obligations to defend and indemnify TIG with regard to those claims. "As a result of the withdrawal from the defense and failure to indemnify" TIG "for certain claims" by the other insurers, FFIC began assuming the other insurers' obligations to TIG, and FFIC now specifically seeks "reimbursement, indemnity, and/or contribution" from the other insurers for its assumption of the other insurers' obligations.

***The Motion for Protective Order***

On May 1, 2011, USF&G filed this motion for protective order, seeking to prohibit Fireman's Fund Insurance Company and Associated Indemnity Corporation (collectively "FFIC") from deposing Marsharee Wilcox, a former employee of USF&G. USF&G states that Wilcox left USF&G in May 2007, and "has no knowledge concerning USF&G's handling of asbestos claims after 2007" or any information "concerning any coverage decisions that occurred after June 23, 2007, and that are the subject of FFIC's cross claim." (rec.docs. 130, 130-1) USF&G argues that FFIC's cross claim seeks contribution only for asbestos claims for which a defense was denied, and those declinations were issued "long after" Wilcox left USF&G; thus, her deposition is not relevant to FFIC's claim, and good cause exists for the issuance of a protective order. (rec. doc. 130-1, pg. 2)

In response, FFIC contends that USF&G had waived its right to assert coverage defenses, and that Wilcox, as the claims handler for the TIG files until May 2007, has personal knowledge regarding the decisions made, rationale for, and information considered during the time of her employment when USF&G was defending and indemnifying TIG without any assertion of coverage defenses. FFIC assets that Wilcox's

potential testimony is relevant to the question of whether USF&G's knowledge and or actions could constitute a waiver of its right to assert any coverage defenses. (rec.doc. 131)

USF&G replied, contending that FFIC was attempting to conduct discovery for a companion suit,[2] and that any discovery allowed should be limited to asking Wilcox whether or not she was aware of any reservations of rights being issued while she was a claims handler.

## *GOVERNING LAW & ANALYSIS*

Federal Rule of Civil Procedure 26(b) allows "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." The Federal Rules of Civil Procedure therefore permit broad discovery, allowing inquiry into any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party. *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); Fed. R. Civ. P. 26(b)(1). Once a relevancy objection has been raised, the party seeking the discovery must demonstrate that the request is within the scope of discovery. Once this showing has been made, the responding party must make a showing of some sufficient reason why discovery should not be allowed. *Andritz Sprout- Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609 ( D.C. Pa. 1997). A showing of sufficient reason requires that the responding party clarify and explain their objections, and provide support for those objections. *Krawczyk v. City of Dallas*, 2004 WL 614842, *6 (N.D.Tex. Feb.27, 2004) (

---

[2]FFIC also has pending a second lawsuit claiming that USF&G breached its duty of good faith and fair dealing arising out of an oral contract with FFIC to share in the defense and indemnity costs of TIG regarding the underlying asbestos claim on a true *pro rata* basis from December 2, 1997, to July 1, 2008, and that USF&G omitted a number of its policies in making the *pro rata* calculation. (C.A. No. 11-00145-RET-CN, rec.doc. 3, pg. 5, 6)

*citing Ahern v. Trans Union LLC Zale Corp*., 2002 WL 32114492, *2 (D.Conn. Oct.23, 2002)). The party resisting discovery has the burden to establish the lack of relevance by showing that the requested discovery either is outside the broad scope of relevance as defined by Rule 26(b)(1), or is of such marginal relevance that the potential harm that would arise from discovery outweighs the "ordinary presumption in favor of broad disclosure ." *Merrill v. Waffle House, Inc*., 227 F.R.D. 467 (N.D. TX 2005), *quoting Scott v. Leavenworth Unified School Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999) (*citing Etienne v. Wolverine Tube, Inc., 185 F.R.D. 653, 656* (D. Kan. 1999). While the ordinary presumption in discovery is in favor of broad disclosure, it is within the court's discretion to set parameters regarding discovery. *See also,* F.R.C.P. 26(c)(1)(D)( forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters).

At issue here is the scope of discovery regarding Wilcox's deposition. According to Wilcox, she was employed by USF&G, St. Paul, and Travelers as a claims handler from approximately 1995 until May 2007, and she handled "certain asbestos claims asserted against" TIG. (rec.doc. 130-4, Wilcox affidavit) Wilcox further states that after she left her employment in May 2007, she "was not involved in and made no decisions concerning USF&G's obligations, if any, with respect to any claims asserted against Turner [TIG]." *Id.*

While Wilcox may not have made any decisions after she left, she certainly was "involved in" and made decisions during her tenure as a claims handler for some 12 years of the period of asbestos claims against TIG – the very same claims that were later denied. What she knew, when she knew it, and why USF&G decided one thing or the other certainly could affect or could have had a bearing on decisions made later, especially when

the denials came on the heels of her departure.[3]  Wilcox does not have to be aware of the ultimate impact of her involvement or to have been a direct participant in later decisions for her knowledge and actions to be relevant to the claims brought by FFIC.

Finally, that Wilcox's testimony may be relevant to issues in another lawsuit does not make that testimony irrelevant in the instant lawsuit.  FFIC seeks reimbursement for its payment of obligations allegedly owed by the other insurers.  Any information that Wilcox has which concerns those obligations is relevant.

The court therefore is unpersuaded by USF&G's arguments.

Accordingly,

**IT IS ORDERED** that USF&G's motion for protective order is **DENIED**.

Signed in Baton Rouge, Louisiana, on August 1, 2011.

**MAGISTRATE JUDGE DOCIA L. DALBY**

---

[3]The denials began within five months of her departure.