UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TURNER INDUSTRIES GROUP, LLC

CIVIL ACTION

VERSUS

NO. 09-834-BAJ-DLD

THE TRAVELERS COMPANIES, INC.,
THE TRAVELERS INDEMNITY COMPANY,
UNITED STATES FIDELITY AND
GUARANTY COMPANY, AND FIREMAN'S
FUND INSURANCE COMPANY

## RULING ON MOTION TO DISMISS

This matter is before the Court on two motions to dismiss by defendant in the cross-claim, The Travelers Companies, Inc. ("Travelers Companies") (doc. 40) and (doc. 113), who moves the Court to dismiss the cross-claim filed by Fireman's Fund Insurance Company ("Fireman's Fund") (doc. 34). Fireman's Fund has opposed both motions (doc. 48) and (doc. 118), and Travelers Companies has replied (doc. 82). As the Court dismissed plaintiff Turner Industries Group, LLC's claims on April 6, 2011 (doc. 127), only Fireman's Fund's claims in the cross-claim remain. Jurisdiction is based on 28 U.S.C. §1332.

## FACTS AND BACKGROUND

Defendants in the cross-claim are Fidelity and Guaranty Insurance Underwriters, Inc., United States Fidelity and Guaranty Company ("USF&G"),

The Travelers Indemnity Company ("Travelers Indemnity"), and Travelers Companies (doc. 34, p. 1). In its cross-claim, Fireman's Fund asserts that USF&G provided insurance coverage to plaintiff Turner Industries Group ("the Turner entities"), or one or more subsidiaries of the Turner entities from March 1, 1976 through at least March 1, 1989 (doc. 34, p. 2, ¶ II). Fireman's Fund asserts that beginning in 1994 and continuing to the present, the Turner entities have been named as defendants in multiple asbestos bodily injury claims (doc. 34, p. 2, ¶ III). Fireman's Fund alleges that it began defending the Turner entities in 1994, and both USF&G and Travelers Indemnity "and/or" Travelers Companies have also contributed to the defense and settlement of the claims against the Turner entities on a pro rata basis (doc. 34, p. 2, ¶ IV, V, VI). Fireman's Fund further asserts that after both USF&G and Travelers Indemnity and/or Travelers Companies participated in the defense and indemnification of Turner Industries, they began to deny their obligations to the Turner entities; and, thus, Fireman's Fund assumed obligations to the Turner entities that were owed by USF&G (doc. 34, p. 3, ¶ VII, VIII). Fireman's Fund argues, therefore, that it is entitled to reimbursement, indemnity and/or contribution from USF&G "individually" or from Travelers Indemnity and Travelers Companies (doc. 34, p. 3, ¶ IX).

In its motion to dismiss, Travelers Companies asserts that the Court does not have personal jurisdiction over it pursuant to Fed. Rule Civ. Proc. Rule 12(b)(2) (doc. 40-1, p. 1). Specifically, it argues that Fireman's Fund fails to

allege any basis to support the Court's exercise of personal jurisdiction over it, and Fireman's Fund's "conclusory allegations are insufficient to establish personal jurisdiction." (Doc. 40-1, p. 1).

Travelers Companies contends that (1) it is neither authorized to conduct business in Louisiana, nor has it conducted business in Louisiana (in connection with the subject matter of Plaintiff's complaint or otherwise), and [Fireman's Fund] does not contend otherwise; (2) it is merely a holding company and does not issue, underwrite, sell, or provide insurance; (3) it has not assumed any obligations under any insurance policies issued by any subsidiaries whatsoever, including any policies issued by USF&G to the Turner entities and it did not undertake the management of coverage for asbestos claims; (4) it does not employ the members of the Special Liability Group, which is the unit charged with managing the Turner entities' claims; and that (5) USF&G is a second-tier, wholly-owned subsidiary of Travelers Companies with its own assets that are separate and distinct from those of Travelers Companies (doc. 40-1, pp. 1-3).

## ANALYSIS

In this diversity action, Travelers Companies asserts that it is not subject to the jurisdiction of this court—pursuant to Fed. Rule Civ. Proc. Rule 12(b)(2)—as, *inter alia*, it is not doing any business in Louisiana and has no contacts with Louisiana which would support this Court's exercise of *in personam* jurisdiction over it (doc. 40, p. 1). When a challenge is made to the propriety of the court's

3

exercise of jurisdiction, the burden is on the plaintiff—in this case the plaintiff in the cross-claim, Fireman's Fund—to establish that jurisdiction is proper under applicable law. *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985). To withstand a 12(b)(2) motion, a "plaintiff need only present a *prima facie* case of personal jurisdiction to satisfy its burden." *Stripling v. Jordan Productions Co.,* 234 F.3d 863, 869 (5th Cir. 2000). "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts."[1] *Id.*

It is well settled that in a diversity action, a federal district court may exercise jurisdiction over a nonresident only to the extent that a court of the state could properly exercise jurisdiction. *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir. 1985). Pursuant to La. Rev. Stat. § 13:3201, Louisiana's long-arm statute, courts are permitted to exercise personal jurisdiction over non-residents consistent with the Louisiana State Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *A&L Energy, Inc. v. Pegasus Group,* 791 So. 2d 1266, 1270 (La. 2001). The determination of whether constitutional due process requirements have been met when a state exerts personal jurisdiction over a nonresident involves a two-pronged inquiry: "(a) the nonresident must have some minimum

---

[1] It should be noted that the Court has declined to conduct an evidentiary hearing on the motion.

4

contact with the forum which results from an affirmative act on his part; and (b) it must be fair and reasonable to require the nonresident to defend the suit in the forum state." *Stuart v. Spademan,* 772 F.2d at 1189.

Inquiry under the first prong, the "minimum contacts" prong, is intended to reveal whether the defendant's actions constitute a "purposeful availment" of the benefits and protections of the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). *Int'l Shoe Co. v. State of Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945). The "minimum contacts" prong may be further subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Wilson v. Belin,* 20 F.3d 644, 647 (5th Cir. 1994). Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Id.* citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). General jurisdiction, however, will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts with the forum state are both "continuous and systematic." *Id.* citing *Helicopteros,* at 414 n. 9.

If a nonresident defendant has sufficient specific or general minimum contacts with the forum, a court must then consider the second prong of the

analysis, the "fairness" prong of the jurisdictional inquiry. *Belin*, at 647 citing *Asahi*, 480 U.S. at 105, 107 S.Ct. at 1033. The Supreme Court has stated that the "fairness" of requiring a nonresident to defend a suit in a distant forum is a function of several factors, including the "interests of the forum State." *Id*. The factors considered in the fairness inquiry are: (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Id*.

The Fifth Circuit has noted that "courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts." *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir 1999). However, any presumption of corporate separateness "may be overcome by clear evidence." *Id*. Therefore, a party is required to show "an additional or a plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family. There must be evidence of one corporation asserting sufficient control to make the other its agent or alter ego." *Id*. In *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir.1983), the Fifth Circuit set out factors for a district court to consider in deciding whether a court can exercise *in personam* jurisdiction over a parent company because of

the acts of a subsidiary. *Id.* at 1159. The *Hargrave* factors consider: (1) the amount of stock owned by the parent of the subsidiary; (2) whether the two corporations have separate headquarters; (3) if the corporations have common officers and directors; (4) whether the corporations observe corporate formalities; (5) if the corporations maintain separate accounting systems; (6) if the parent exercise complete authority over general policy; and (7) whether the subsidiary exercises complete authority over daily operations. *Dickson*, at 338 citing *Hargrave*, at 1160.

The Court concludes that Fireman's Fund has failed to meet its *prima facie* burden of showing that the Court has personal jurisdiction over Travelers Companies. Although Fireman's Fund alleges that Travelers Companies is USF&G's parent, Fireman's Fund fails to point to any facts that rebut the presumption of institutional independence of a parent and a subsidiary. Fireman's Fund has not sufficiently shown that Travelers Companies asserts any substantial control over USF&G. The Court notes that Fireman's Fund has not alleged that Travelers Companies is a mere "alter ego" of USF&G. Furthermore, Travelers Companies contends—and Fireman's Fund does not dispute—that it has no control over USF&G, and is a separate entity from USF&G (doc. 40-1); (doc. 48). Accordingly, Fireman's Fund has not cited facts that show that the Court has specific jurisdiction over Travelers Companies.

Similarly, Fireman's Fund cannot allege that the Court has general jurisdiction over Travelers Companies, as it has not contested Travelers Companies' allegation that it does not do business in Louisiana. Although Fireman's Fund claims that it "has asserted numerous instances of [Travelers Companies] contacts with the State of Louisiana," Fireman's Fund fails to point the Court to specific evidence in the record that would support its assertion (doc. 48, p. 2).

As previously noted, the burden is on Fireman's Fund to allege uncontroverted facts which would permit the Court to assert personal jurisdiction over Travelers Companies. However, Fireman's Fund has failed to sufficiently allege such uncontroverted facts, and has failed to demonstrate that the activities of Travelers Companies relating to the State of Louisiana evidence a purposeful availment by Travelers Companies of the benefits and protections of the laws of Louisiana. As Fireman's Fund has not set forth sufficient evidence to prove the first prong of the personal jurisdiction analysis, it is not necessary to reach the second prong, the fairness analysis.

Accordingly, this Court does not have *in personam* jurisdiction over Travelers Companies.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Travelers Companies, Inc.'s motion to dismiss (doc. 40) Fireman's Fund's cross-claim is hereby **GRANTED**.

It is **FURTHER ORDERED** that Traveler's Companies, Inc's second motion to dismiss (doc. 113) is **HEREBY DISMISSED** as moot.

Baton Rouge, Louisiana, August 29, 2011.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA